[Docket No. 11]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| BODY PHYSICS,<br><br>        Plaintiff,<br><br>    v.<br><br>NATIONWIDE INSURANCE d/b/a HARLEYSVILLE INSURANCE COMPANY, et al.,<br><br>        Defendants. | Civil No. 20-9231 (RMB/AMD)<br><br>**OPINION** |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motion to Dismiss brought by Defendant Harleysville Insurance Company. [Docket No. 11.] For the reasons expressed below, the Court will grant Defendant's Motion.

**I.    FACTUAL BACKGROUND**

Plaintiff Body Physics is a gym located in Haddonfield, New Jersey that, like many businesses, was adversely affected by the global COVID-19 pandemic. Plaintiff provides "fitness instruction to members of the public" who pay membership dues. [Docket No. 1-1, ¶¶ 9-10.] Prior to the events that led to this case, Plaintiff obtained "a commercial lines insurance policy from" Defendant (the "Policy"), for which it "paid . . . a premium . . . totaling approximately $3,823." [Id., ¶¶ 11-13.] The Policy was in force at

all relevant times to this case. [Id., ¶ 13.] The Policy includes a "Business Income (And Extra Expense)" provision that provides that Defendant

> will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.

[Id., ¶¶ 15-16.][1]

The Policy "also includes coverage for losses related to actions taken by civil authorities" (the "Civil Authority Provision"). [Id. ¶ 18.] The Civil Authority Provision states that

> [w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

---

[1] The Policy defines "period of restoration" as the period of time ending "when the property at the described premises should be repaired, rebuilt or replaced." [Docket No. 1-1, at 111 (PDF pagination).]

[Id. at 104 (PDF pagination).]

The Policy "is an 'all risk' type policy" that "provides that covered causes of loss under the policy provide coverage for all covered losses, including but not limited to direct physical loss or damage to insured property, unless a loss is excluded or limited by the policy's language." [Id., ¶ 19 (emphasis added).] In other words, certain losses are excluded from coverage under the Policy.

To that end, the Policy has a provision entitled "Exclusion Of Loss Due To Virus Or Bacteria" (the "Virus Exclusion"), which "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsement that cover business income, extra expense, or action of civil authority." [Id., ¶ 20.] Per the Virus Exclusion, Defendant "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." [Id.]

On March 16, 2020, New Jersey Governor Phil Murphy signed Executive Order 104 (the "Executive Order"), which ordered "[g]yms and fitness centers and classes" to "close[] to members of the public, effective 8:00 p.m. on Monday, March 16, 2020." [Id., ¶

22.] Such "facilities [were] to remain closed to the public for as long as [Executive Order 104] remain[ed] in effect." [Id.]

"Due to the order and/or the pandemic, Plaintiff[ has] been unable to operate the gym and therefore, sustained a direct physical loss resulting in business interruption and loss of income." [Id., ¶ 23.] Although the gym never had a COVID-19 outbreak, its forced closure due to the Executive Order resulted in "substantially" decreased revenue for Plaintiff, to the tune of more than $65,000 in lost revenue. [Id., ¶¶ 24-27.]

In May 2020, Plaintiff placed a claim for loss under the Policy with Defendant. [Id., ¶ 40.] Defendant responded on May 26, 2020, by denying coverage under the Policy. [Id., ¶ 42.] Defendant's letter denying coverage stated that "any business interruption resulting from the business closures occurred away from the described premises and any loss of or damage that may have been sustained did not occur as a result of a covered cause of loss." [Id., ¶ 43.]

## II. PROCEDURAL HISTORY

Plaintiff filed the present action, on behalf of itself and others similarly situated, in the Superior Court of New Jersey, Camden County, on June 24, 2020. [Docket No. 1, ¶ 1.] Defendant removed the case to this Court on July 22, 2020. [Id.] The parties exchanged pre-motion letters, in accordance with the Court's Individual Rules and Procedures, in July and August 2020. [Docket

4

Nos. 5, 9.] The Court declined to hold a pre-motion conference, [Docket No. 10], and Defendant filed its Motion to Dismiss on August 28, 2020, [Docket No 11]. Plaintiff timely filed its response in opposition on September 21, 2020. [Docket No. 13.] Defendant timely filed its reply on September 28, 2020. [Docket No. 14.] Moreover, the parties have supplemented their briefs in light of other courts addressing similar legal issues. [See, e.g., Docket Nos. 15, 16, 21-22.]

**III. JURISDICTION**

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331(a)(1). Plaintiff is a New Jersey limited liability company whose sole member, Jim Bompensa, is a citizen of New Jersey. [Docket No. 1, ¶ 6.] Defendant is an Ohio corporation with its principal place of business in Columbus, Ohio. [Id., ¶ 7.] Therefore, there is diversity of citizenship in this case. Moreover, the amount in controversy exceeds $75,000. [See id., ¶¶ 11-13.]

**IV. STANDARD**

    **A.  Motion to Dismiss Standard**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347,

5

351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas,

6

770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**B.  Interpretation of Insurance Contracts Under New Jersey Law**

"Under New Jersey law, the determination of 'the proper coverage of an insurance contract is a question of law.'" Causeway Automotive, LLC v. Zurich Am. Ins. Co., Civil Action No. 20-8393 (FLW) (DEA), 2021 WL 486917, at *3 (D.N.J. Feb. 10, 2021) (quoting Buczek v. Cont'l Cas. Ins. Co., 378 F.3d 284, 288 (3d Cir. 2004)). "An insurance policy is a contract that will be enforced as written

when its terms are clear in order that the expectations of the parties will be fulfilled." Id. (quoting Flomerfelt v. Cardiello, 997 A.2d 991, 996 (N.J. 2010)). New Jersey courts subject insurance policies "to special rules of interpretation," however, because they are contracts of adhesion. Id. (quoting Longobardi v. Chubb Ins. Co. of N.J., 582 A.2d 1257, 1260 (N.J. 1990)). Issues of public policy and principles of fairness must inform a court's analysis of an insurance policy. See id.; Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1260 (N.J. 1992) ("[C]ourts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness."}; Zacarias v. Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001) ("We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies."). In a case such as this one, where "the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing the claim." Causeway, 2021 WL 486917, at *3 (quoting Rosario ex rel. Rosario v. Haywood, 799 A.2d 32, 37 (N.J. Super. Ct. App. Div. 2002).

As with any other type of contract, "[w]here the express language of the [insurance] policy is clear and unambiguous, 'the court is bound to enforce the policy as it is written.'" Rosario,

799 A.2d at 38 (quoting Royal Ins. Co. v. Rutgers Cas. Ins. Co., 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994)). "If the language is clear, that is the end of the inquiry." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 948 A.2d 1285, 1289 (N.J. 2008). The plain language of the policy, after all, is "the best indication of the parties' reasonable expectations." Causeway, 2021 WL 486917, at *4. Such an approach to contract interpretation ensures that the court enforces "the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express purposes of the policies." Royal Ins. Co., 638 A.2d at 927.

"Additionally, in the context of an insurance policy, '[e]xclusionary clauses are presumptively valid and are enforced if they are "specific, plain, clear, prominent, and not contrary to public policy."'" Causeway, 2021 WL 486917, at *4 (quoting Flomerfelt, 997 A.2d 996 (quoting Princeton Ins. Co. v. Chunmuang, 698 A.2d 9, 17 (N.J. 1997)). As noted above, the insurer bears the burden of establishing that the claim in question falls within the exclusionary clause. Id. at *3-4 (citing Rosario, 799 A.2d at 37; Chunmuang, 698 A.2d at 17). Therefore, "exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." Id. at *4 (quoting Flomerfelt, 997 A.2d at 997). But "[i]f

9

the words used in an exclusionary clause are clear and unambiguous, 'a court should not engaged in a strained construction to support the imposition of liability.'" Flomerfelt, 997 A.2d at 997 (quoting Longobardi, 582 A.2d at 1260). Therefore, a court cannot rely on "[f]ar-fetched interpretations of a policy exclusion" in order "to create an ambiguity requiring coverage." Essex Ins. Co. v. N.J. Pan-African Chamber of Commerce & Indus., Inc., No. A-1237-14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017). Nor can a court "disregard the 'clear import and intent' of a policy exclusion." Am. Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1013 (N.J. 1998) (quoting Westchester Fire Ins. Co. v. Continental Ins. Cos., 312 A.2d 664, 671 (N.J. Super. Ct. App. Div. 1973)). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." Flomerfelt, 997 A.2d at 997 (quoting Stafford v. T.H.E. Ins. Co., 706 A.2d 785, 789 (N.J. Super. Ct. App. Div. 1998)); see Causeway, 2021 WL 486917, at *4 (citations omitted).

**V. ANALYSIS**

Plaintiff's Complaint alleges three claims: Breach of Contract (Count I), Violation of the Covenant of Good Faith and Fair Dealing (Count II), and Declaratory Judgment (Count III). [Docket No. 1-1, ¶¶ 117-143.] All of the claims require as a threshold matter that Plaintiff is entitled to coverage under the

Policy due to the circumstances outlined above, in spite of Defendant's denial of Plaintiff's insurance claim.

Defendant's Motion to Dismiss argues that Plaintiff cannot overcome that threshold issue because "the applicable language" of the Policy "is clear and unambiguous." [Docket No. 11-1, at 7.] Specifically, the Virus Exclusion clearly and explicitly excludes from coverage any loss or damage caused by or resulting from a virus: "We will not pay for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease." [Docket No. 1-1, at 114 (PDF pagination).] Moreover, the Virus Exclusion explicitly applies to "all coverage under all forms and endorsements," including "forms or endorsements that cover business income, extra expense or action of civil authority." [Id.]

Defendant further argues that Plaintiff's claim clearly falls within the Virus Exclusion and that, therefore, Defendant was entitled to deny Plaintiff's claim. In fact, Plaintiff's Complaint itself alleges that the gym had to cease operations "[d]ue to the [Governor's] order and/or the pandemic," which is what ultimately caused the losses. [See id., ¶¶ 23-24, 47.] Plaintiff admits that "the pandemic clearly caused and/or continues to cause plaintiffs and the class members to sustain direct physical loss and property damage." [Id., ¶ 47.] Because the alleged losses fall squarely within the Virus Exclusion, Defendant argues, Plaintiff is not

11

entitled to coverage under the Policy. Therefore, Plaintiff's claims should be dismissed.

In an entirely separate and distinct argument to dismiss this case, Defendant argues that, even if the Virus Exclusion is unenforceable or inapplicable, Plaintiff is not entitled to coverage because the Policy requires "direct physical loss or damage," but Plaintiff readily admits that "there was no virus or bacteria breakout at the gym or associated with the gym." [See Docket No. 11-1, at 9 (quoting Docket No. 1-1, ¶ 30.]

The overwhelming majority of Plaintiff's opposition to the Motion to Dismiss focuses on Defendant's second argument about the "physical loss or damage" requirement. [See Docket No. 13, at 7-21.] Plaintiff does also argue generally that the Virus Exclusion is ambiguous and that discovery is required to decipher its meaning; however, Plaintiff makes this argument without actually pointing to any specific ambiguities in the language of the Virus Exclusion. Rather, Plaintiff argues that the enforcement of the Virus Exclusion by Defendant is contrary to Plaintiff's "reasonable expectations." [See id., at 7.]

In short, Plaintiff's arguments skirt around the principal issue in this case: whether or not the Virus Exclusion language is ambiguous. As a result, Plaintiff failed to demonstrate that the Virus Exclusion is, in fact, ambiguous. "A genuine ambiguity exists in an insurance contract 'where the phrasing of the policy is so

confusing that the average policyholder cannot make out the boundaries of coverage.'" Causeway, 2021 WL 486917, at *5 (quoting Lee v. Gen. Acc. Ins. Co., 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001)). As noted above, Plaintiff does not point to any specific language in the Virus Exclusion that is ambiguous. The closest Plaintiff comes to doing this is arguing at some length that the meaning of "physical loss or damage" is ambiguous, such that discovery is required to determine the meaning of the Virus Exclusion.

However, this argument puts the cart before the horse. Whether Plaintiff suffered "physical loss or damage" is a secondary inquiry. The primary inquiry is whether the alleged physical loss or damage was caused by a virus. If it was, then the Virus Exclusion unambiguously excludes the alleged physical loss or damage from coverage.

The Virus Exclusion is unambiguous and applies here. Numerous courts have considered similar exclusions and found them "to be unambiguous and clearly applicable 'to COVID-19, which is caused by a coronavirus that causes physical illness and distress.'" Humans & Resources, LLC v. Firstline Nat'l Ins. Co., No. 20-2152, 2021 WL 75775, at *8 (E.D. Pa. Jan. 8, 2021) (quoting Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am., 2020 WL 7024287, at *3 (E.D. Pa. Nov. 30, 2020)); see also Pez Seafood DTLA, LLC v. Travelers Indem. Co., No. 20-4699, 2021 WL 234355, at

13

*7 (C.D. Cal. Jan 20, 2021) ("[T]he Virus Exclusion clearly and unambiguously applies, as courts applying similar exclusions to COVID-19 have consistently found."); AFM Mattress Co., LLC v. Motorists Commercial Mut. Ins. Co., 2020 WL 6940984, at *4 (N.D. Ill. Nov. 25, 2020) (holding that there was "no ambiguity in the [Virus Exclusion's] language").

Analyzing an identical Virus Exclusion,[2] Chief Judge Wolfson recently wrote, "I do not find the Virus Exclusion to be ambiguous in any way." Causeway, 2021 WL 486917, at *5 (citing Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., No. L-2629-20, 2020 WL 7422374, at *9 (N.J. Super. Ct. Law Div. Nov. 5, 2020)). She continued, "The Virus Exclusion plainly provides that Defendant will not cover any loss caused by 'any virus . . . or other microorganism that induces or is capable of inducing physical distress, illness, or disease.'" Id. In that case, unlike here, the plaintiffs actually offered an alternative interpretation of the Virus Exclusion. See id. Nevertheless, the Court resoundingly rejected the plaintiffs' argument, noting that such an "interpretation would require the Court to add additional language that does not appear in the Policy." Id. The language of the Virus

---

[2] See Causeway, 2021 WL 486917, at *2 ("The [Virus Exclusion] states that Defendant 'will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.'")

14

Exclusion here is exactly the same as in Causeway, and, unlike the plaintiffs in that case, Plaintiff here has offered no possible alternative meaning of the Virus Exclusion. Therefore, like the Court in Causeway, this Court finds no reason to "render [the Virus Exclusion] ambiguous or otherwise unclear." See id.

Moreover, there is no dispute that COVID-19 is caused by a virus. Plaintiff admits that its alleged losses occurred because of the COVID-19 pandemic and the Governor's orders, which themselves were caused by the virus. See id. at *6 ("The Executive Orders were issued for the sole reason of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey. . . . [T]he 'but for' cause of Plaintiffs' losses was COVID-19—the Executive Orders and the virus are so inextricably connected that it is undeniable that the Orders were issued because [of] the virus."). Therefore, because (1) the Virus Exclusion is unambiguous, (2) the Virus Exclusion excludes from coverage any losses caused by a virus, and (3) the but for cause of Plaintiff's alleged losses and this case is the Coronavirus, Defendant's denial of Plaintiff's insurance claim was appropriate.[3]

Plaintiff's argument that the application of Virus Exclusion did not comport with Plaintiff's "reasonable expectations" is

---

[3] Plaintiff does not argue that the Virus Exclusion violates public policy.

15

irrelevant. In fact, the Court will only consider "the reasonable expectations of the insured'" "[w]here a genuine ambiguity exists." Id. (quoting Zacarias, 775 A.2d at 1264). Here, where no such genuine ambiguity exists, the Court's consideration of the parties' reasonable expectations could result in the Court "writ[ing] for the insured a better policy of insurance than one purchased." Zacarias, 775 A.2d at 1264 (quoting Gibson v. Callaghan, 730 A.2d 1278, 1282 (N.J. 1999)). The New Jersey Supreme Court has explicitly advised against doing this "[i]n the absence of any ambiguity." Gibson, 730 A.2d at 1282. Therefore, the Court will not entertain such an argument here.

Plaintiff's argument that it, in fact, suffered "direct physical loss . . . or damage" is also irrelevant. In fact, the Court can assume, arguendo, that Plaintiff's losses constitute "direct physical loss . . . or damage." This would have no impact on the Court's ruling because, even if such loss or damage existed, it would be excluded from coverage under the Virus Exclusion, as outlined above. Plaintiff's argument, and its reliance on the Insurance Services Office 2006 circular, [see Docket No. 13, at 11-18], only impacts whether or not Plaintiff's losses would be covered if the Virus Exclusion did not apply. However, because the Virus Exclusion applies and is legally enforceable, the Court need not entertain the question of whether Plaintiff's alleged losses constitute "direct physical loss . . . or damage." Therefore, it

16

will not do so. Further, additional discovery regarding the ISO 2006 circular and the meaning of "direct physical loss . . . or damage" would be superfluous. In sum, Plaintiff's arguments about this issue are unpersuasive in light of the Court's finding that the Virus Exclusion is unambiguous, enforceable, and applicable to the case at hand.

In sum, the Virus Exclusion is unambiguous and it excludes Plaintiff's alleged losses, which were unfortunately caused by COVID-19, a virus that has affected too many businesses and individuals. Therefore, Plaintiff's claims in this action are legally insufficient.

## VI.  CONCLUSION

For the reasons expressed above, the Court will grant Defendant's Motion to Dismiss [Docket No. 11]. Plaintiff's Complaint will be dismissed in its entirety. An accompanying Order shall issue.

| | |
|---|---|
| March 10, 2021 | s/Renée Marie Bumb |
| Date | RENÉE MARIE BUMB |
| | United States District Judge |